UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| RISHI VAS KURRA, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | Civil Action No. 15-cv-13952-ADB |
| | * | |
| SYNERGY COMPUTER | * | |
| SOLUTIONS, INC., | * | |
| | * | |
| Defendant. | * | |

**MEMORANDUM AND ORDER**

BURROUGHS, D.J.

The dispute in this case centers on an employee's non-competition agreement. Plaintiff Rishi Vas Kurra ("Kurra") brings a Complaint for declaratory judgment against his former employer, Defendant Synergy Computer Solutions, Inc. ("Synergy") seeking a declaration (1) that the non-competition clause in Kurra's employment agreement is unenforceable; and (2) that Kurra is not contractually obligated to reimburse Synergy for approximately $9,550 in visa application fees and travel expenses that Synergy paid on Kurra's behalf.

On October 30, 2015, Kurra filed his original Complaint ("Compl.") in the Massachusetts Superior Court for Middlesex County. See [ECF No. 1-2]. On November 25, 2015, Synergy removed the action to federal district court on the basis of diversity jurisdiction. See Notice of Removal [ECF No. 1].

Shortly after removing the action, Synergy filed a Motion to Dismiss Plaintiff's Complaint pursuant to Fed. R. Civ. P. 12(b)(3), alleging improper venue. [ECF No. 4]. Synergy contends that this dispute is governed by a forum-selection clause in Kurra's employment agreement, which requires that all disputes be resolved by a court in Michigan. In the alternative,

1

Synergy moves to transfer this action to the United States District Court for the Eastern District of Michigan.

On December 22, 2015, Kurra filed a Motion to Remand the action to state court. [ECF No. 8]. Kurra argues that there is no basis for diversity jurisdiction under 28 U.S.C. § 1332, because the statute's $75,000 amount-in-controversy requirement is not satisfied. Id.

The Court held a hearing on the parties' respective motions on January 13, 2016. For the reasons set forth in this Memorandum and Order, Kurra's Motion to Remand is <u>DENIED</u>, and Synergy's Motion to Dismiss is <u>DENIED</u>, but its alternative Motion to Transfer is <u>ALLOWED</u>.

## I.    FACTS ALLEGED IN THE COMPLAINT

Kurra's Complaint alleges as follows:

Kurra, a computer programmer, is a currently a resident of Dracut, Massachusetts. Synergy is a Michigan corporation with a principal place of business in Bingham Farms, Michigan. Compl. ¶¶ 1-2.

According to Kurra, on or about January 23, 2014, he entered into a Visa Application Agreement with Synergy's affiliated entity in Hydurabad, India, pursuant to which Synergy agreed to employ Kurra in the United States for 18 months, and to apply for an H1-B visa on his behalf. <u>Id.</u> ¶ 5.[1]

---

[1] A copy of the Visa Application Agreement is attached as Exhibit A to the Declaration of Sridhar Guduguntla (Guduguntla Decl."), which Synergy submitted along with its Notice of Removal. [ECF No. 1-3]. The Visa Application Agreement, which is in fact titled "Application Reimbursement Agreement," provides that if Kurra fails to commence employment with Synergy within eighteen months, or if he were to leave the company within eighteen months of joining, Kurra must reimburse Synergy for travel and moving expenses, visa processing fees, airfare, and other expenses the company incurred on his behalf. The Agreement also contains a liquidated damages clause in the amount of $10,000.

Kurra claims that during the negotiation of this agreement, Synergy represented to him that it had several clients in need of his services, and that Kurra would be "staffed" on a project for one such client. Id. ¶ 10.

Subsequently, Synergy applied for and received an H1-B visa on Kurra's behalf, which allowed him to work in the United States from October 2014 through September 30, 2015. Id. ¶ 7. In the visa application, Synergy represented that Kurra would be performing duties as a computer programmer analyst on projects for Synergy's client, Johnson Controls, Inc. ("JCI"). Synergy further represented that JCI had a "master service agreement" with Synergy for technical support on various projects. Id. ¶ 11.

After Synergy obtained the visa, it rearranged for Kurra's relocation to Michigan. Kurra arrived in the United States on or about February 16, 2015. Id. ¶ 8. When he arrived, however, a representative from Synergy's human resources department informed him that she had no knowledge of any contract with JCI, and that Synergy currently had no projects for Kurra to work on. Id. ¶ 12. Synergy instructed Kurra to search job postings in order to find a position where Synergy could staff him. From Kurra's arrival until March 15, 2015, Synergy paid him a stipend in lieu of a salary. Id. ¶ 8. Kurra was officially placed on Synergy's payroll on March 16, 2015. Id.

Kurra further claims that after he arrived in Michigan, Synergy required him to execute a "Non-Competition, Invention, Reimbursement and Confidentiality Agreement" (the "Non-Competition Agreement"). Kurra's Complaint alleges that the terms of the Non-Competition Agreement had not been disclosed to him in January 2014, when he negotiated and signed the

Visa Application Agreement in India. Id. ¶ 9. Kurra signed the Non-Competition Agreement on March 16, 2015.[2]

Eventually, Kurra found a position at a staffing company called "Randstad," which was located in Woburn, Massachusetts. Compl. ¶ 13. Kurra began working for Randstad on or about June 22, 2015. Randstad, in turn, placed Kurra with its own client, Kronos, Inc. ("Kronos"), a company located in Chelmsford, Massachusetts. Id. At all relevant times, however, Kurra remained a Synergy employee and was paid by Synergy, not by Randstad or Kronos. Id.

In July 2015, Kurra raised certain issues with Synergy's human resources department, including a concern about whether Synergy intended to apply for an extension of his H1-B visa, which was set to expire on September 30, 2015. Id. ¶ 16. On or about July 14, 2015, Synergy's Human Resources Manager, Damaris Madigral ("Madigral"), confirmed that Synergy would apply for a visa extension on August 15, 2015. Id. Although Kurra followed up with Madigral in three separate emails dated August 24, September 11, and September 28, 2015, Madigral failed to respond. Id. ¶¶ 17-18.

On September 30, 2015, which was the last day on which an employer could submit a renewal application for his H1-B visa, Kronos offered Kurra a full-time position as a Kronos employee, and it further agreed to file an H1-B visa extension application on his behalf. Id. ¶ 19.

On or about October 5, 2015, Kurra informed Synergy that he was resigning effective October 11, 2015. Id. ¶ 20. Kurra claims that in response, Synergy's Business Development Manager threatened to take legal action and seek reimbursement for payments under the Visa Application Agreement. Id. ¶ 21. Synergy followed up with a letter to Kurra dated October 7, 2015, in which counsel for Synergy made a formal demand for reimbursement in the amount of

---

[2] A copy of the Non-Competition Agreement is attached as Exhibit B to the Guduguntla Declaration.

4

$9,550, which Synergy allegedly spent on Kurra's travel and visa expenses. Id. ¶ 22. This letter

also reminded Kurra about the terms of his Non-Competition Agreement, which provided in

relevant part as follows:

> Employee agrees that he/she, for the twelve (12) month period
> following termination or resignation, will not solicit, contact or hire,
> either directly or indirectly, any of Synergy's clients, consultants,
> and/or employees for the purpose of providing
> computer/engineering technology services, human resource/staffing
> systems and/or any products and services competitive with the
> products and services offered by Synergy.

Id. ¶¶ 22-23; see also Guduguntla Decl., Ex. B.

Kurra alleges, upon information and belief, that Kronos is not a client of Synergy. Compl.

¶ 24. He further alleges that he did not solicit or contact Kronos for the purposes of providing

services; rather, it was Kronos that approached Kurra. Id.

Finally, the Court notes that the Non-Competition Agreement contains a choice-of-law

clause, which provides that the Agreement "shall be construed in accordance with Michigan law."

Guduguntla Decl., Ex. B. The Agreement also contains a forum-selection clause, stating that:

> Employee agrees that all actions arising directly or indirectly out of
> this Agreement shall be litigated only in the United States District
> Court for the Eastern District of Michigan, Southern Division, or the
> Oakland County, Michigan Circuit Court, and Employee hereby
> irrevocably consents to the personal jurisdiction and venue of those
> courts.[3]

Id.

## II.   MOTION TO REMAND

Kurra's Motion to Remand challenges this Court's federal subject matter jurisdiction.

Accordingly, the Court addresses the jurisdictional issue before turning to Synergy's Motion to

---

[3] A copy of the Non-Competition Agreement is attached as Exhibit B to the Guduguntla
Declaration. [ECF No. 1-3].

Dismiss or Transfer. See Herbert H. Landy Ins. Agency, Inc. v. Navigators Mgmt. Co., No. 14-12552, 2014 WL 3908179, at *3 (D. Mass. Aug. 8, 2014).

Federal courts are courts of limited subject matter jurisdiction. In this action, Synergy asserts that the Court has subject matter jurisdiction under 28 U.S.C. § 1332, which requires the parties to be citizens of different states, and the amount in controversy to exceed the sum or value of $75,000. See 28 U.S.C. § 1332(a). Although Kurra does not dispute that the parties are diverse, he argues that the amount in controversy does not exceed the $75,000 threshold.

When a case is removed to federal court on the grounds of diversity jurisdiction, the amount in controversy is governed by 28 U.S.C. § 1446(c)(2), which provides that:

> the sum demanded in good faith in the initial pleading shall be deemed to be the amount in controversy, except that–
>
> **(A)** the notice of removal may assert the amount in controversy if the initial pleading seeks–
>
> > **(i)** nonmonetary relief; or
> > **(ii)** a money judgment, but the State practice either does not permit demand for a specific sum or permits recovery of damages in excess of the amount demanded; and
>
> **(B)** removal of the action is proper on the basis of an amount in controversy asserted under subparagraph (A) if the district court finds, by the preponderance of the evidence, that the amount in controversy exceeds the amount specified in section 1332(a).

28 U.S.C. § 1446(c)(2).

Kurra's state court complaint does not request monetary relief. Rather, Kurra seeks only a declaratory judgment that (1) he is not obligated to reimburse Synergy for $9,500 in expenses under the Visa Application Agreement; and (2) that the Non-Competition Agreement is unenforceable. Synergy, however, in accordance with § 1446(c)(2)(A), asserts in its Notice of Removal that the amount in controversy is $149,500, which includes the alleged value of Synergy's vendor contract with Randstad ($140,000), plus the $9,500 in visa fees and travel

expenses that Synergy allegedly paid on Kurra's behalf. Kurra disputes this figure, arguing that it is conclusory and unsupported, and that Synergy has not met its burden of proving that the amount in controversy requirement is satisfied.

Where, as here, the plaintiff disputes the amount in controversy asserted by the removing party, § 1446 provides that "both sides submit proof and the court decides, by a preponderance of the evidence, whether the amount-in-controversy requirement has been satisfied." Dart Cherokee Basin Operating Co., LLC v. Owens, 135 S. Ct. 547, 554 (2014) ("Evidence establishing the amount is required by § 1446(c)(2)(B) only when the plaintiff contests, or the court questions, the defendant's allegation."). The Court is the finder of fact for these purposes. Id.

The Court has considered the pleadings, memoranda, affidavits, and supporting documentation that the parties submitted in connection with Kurra's Motion to Remand. The Court has also considered representations made by counsel at the January 13, 2016 hearing. Based on these materials, the Court makes the following findings of fact:

While Kurra was employed by Synergy, he was placed in a position with Synergy's customer Randstad, so that Randstad could, in turn, service a position at Kronos Corporation. See Second Supplemental Declaration of Sridhar Guduguntla [ECF No. 14-1 ("2nd Supp. Guduguntla Decl.") ¶ 3]. Pursuant to a written Third Party Vendor Agreement between Synergy and Randstad, Randstad paid Synergy $70.00 per hour for Kurra's services. Id. ¶ 6. The Third Party Vendor Agreement had a one-year term—from June 15, 2015 through June 15, 2016. During the period he worked for Synergy, Kurra was a full-time employee and billed at least 40 hours a week working for Kronos. Id. ¶ 5. Thus, Synergy regularly received weekly payments of $2,800 for Kurra's services between June 28, 2015 and December 2, 2015. Id. ¶ 7.

While employed by Synergy, Kurra received compensation in the form of (1) an annual salary of $64,000; (2) health, dental, and vision benefits; and (3) certain paid holidays and paid time off. Id. ¶ 8.

As a Kronos employee, Kurra currently earns an annual salary of $110,000. See Jan. 13, 2016 Hearing Transcript.

Although Synergy argues that the amount in controversy should be measured by the economic consequences to Synergy (*i.e.*, the disruption of its year-long Third Party Vendor Agreement with Randstad), the majority of courts assess the amount in controversy "from the viewpoint of the plaintiff." CE Design Ltd. v. Am. Econ. Ins. Co., 755 F.3d 39, 43 (1st Cir. 2014). Thus, in cases seeking declaratory relief, the amount in controversy "is the value of the right or the viability of the legal claim to be declared, such as a right to indemnification or a duty to defend." Id. (quoting 14AA Charles Alan Wright et al., Federal Practice and Procedure § 3708 (4th ed.)). In addition, courts in this District have held that any counterclaims to be asserted by the removing defendant should not be considered when determining the amount in controversy. See FLEXcon Co. v. Ramirez Commercial Arts, Inc., 190 F. Supp. 2d 185, 187 (D. Mass. 2002).

Accordingly, the Court evaluates the amount in controversy by estimating the value of Kurra's claims for declaratory judgment, from Kurra's perspective. Count I seeks a declaratory judgment that Kurra is not contractually obligated to reimburse Synergy for the $9,550 in fees and travel expenses under the Visa Application Agreement. Thus, the value of the claim in Count I is $9,500. Count II seeks a declaratory judgment that the parties' Non-Competition Agreement is unenforceable. Although the value of this claim is somewhat more difficult to estimate, it is best approximated by the amount Kurra stands to lose if the Non-Competition Agreement is enforced.  See 14AA Charles Allen Wright et al., Federal Practice and Procedure § 3708 (4th

ed.) (noting that amount in controversy can be approximated by the "value to the plaintiff to enjoy the property business, or personal affairs that constitute the subject of the action free from the activity sought to be enjoined or the benefit of the conduct requested to be mandated"). Assuming the Non-Competition Agreement is enforced for a one-year term, Kurra would be prohibited from working for Kronos for 12 months. Thus, he stands to lose at least the $110,000 salary that he presently earns at Kronos.[4]

Because the aggregate value of Kurra's claims exceeds the minimum statutory threshold of $75,000, the Court finds that it has subject matter jurisdiction over this action. See 28 U.S.C. § 1332. Kurra's Motion to Remand is therefore DENIED.

## III.    SYNERGY'S MOTION TO DISMISS OR TRANSFER

Synergy, in reliance on the Michigan forum-selection clause in the Non-Competition Agreement, argues that this action should be dismissed or, in the alternative, transferred to the Eastern District of Michigan, because Kurra contractually agreed that "all actions arising directly or indirectly" out of the Non-Competition Agreement would be litigated in Michigan.

In response, Kurra asserts that the Non-Competition Agreement, along with its forum-selection clause, is invalid because he signed the Agreement under duress. Specifically, he contends that when Synergy first recruited him in India, it failed to mention that he would be required to sign a non-competition or a forum-selection agreement as conditions of his

---

[4] At the January 13, 2016 hearing before the Court, counsel for Kurra suggested that the amount-in-controversy should not be the full $110,000 salary that Kurra currently earns, but rather the difference between his current salary and his former $64,000 salary at Synergy. The Court declines to adopt such a formula in this case. Kurra has already resigned from his position at Synergy, and there is no evidence that Synergy would re-employ Kurra if his Non-Competition Agreement were to be enforced. Further, there has been no evidence suggesting that Kurra could readily obtain alternative employment, and given Kurra's immigration status, the Court declines to assume that he could. Thus, Kurra stands to lose his full $110,000 salary at Kronos, not merely the salary differential.

employment. Kurra claims that Synergy presented him with the Non-Competition Agreement only after he had traveled hallway around the world and relocated to the United States to begin employment with Synergy. Kurra states that when he arrived in the United States, Synergy's human resources representative told him that he needed to sign the Non-Competition Agreement before they could place him on the Synergy payroll. He also claims that he did not have an opportunity to review the Agreement with a lawyer, or negotiate its terms. Kurra contends that he signed the Agreement because he feared what might happen if Synergy refused to employ him. Specifically, he was concerned about his immigration status, which was largely dependent on his continued employment at Synergy.[5]

### A.  Legal Standard

Although Synergy moves to dismiss for improper venue pursuant to Fed. R. Civ. P. 12(b)(3), the Supreme Court recently clarified that a motion to dismiss under Rule 12(b)(3) is not the proper means to enforce a forum-selection clause. Atlantic Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Texas, 134 S. Ct. 568, 577 (2013). "Instead, the appropriate way to enforce a forum-selection clause" is (1) through a motion to dismiss for *forum non conveniens*, if the

---

[5] Alternatively, Kurra argues that even if the March 16, 2015 Non-Competition Agreement was valid, it was quickly superseded by a second contract—specifically—an "Acknowledgement and Agreement" pertaining to Synergy's Employee Handbook, which Kurra signed on March 19, 2015 (the "Handbook Acknowledgement"). The Handbook Acknowledgement expressly states that it "supersedes any previous verbal or written policies, statements, understandings or agreements concerning the terms and conditions of your employment at Synergy." Because the Employee Handbook contains no forum-selection clause, Kurra argues that the Michigan forum-selection clause in the March 16, 2015 Non-Competition Agreement was superseded and is no longer in effect. As will be explained, *infra*, the Court finds that the forum-selection clause in the Non-Competition Agreement is valid and enforceable, and it is therefore granting Synergy's motion to transfer. Thus, the Court declines to reach Kurra's alternative argument regarding the effect of the Employee Handbook, which is an issue that will be resolved in the District Court for the Eastern District of Michigan.

clause points to a state or foreign forum; or (2), through a motion to transfer venue pursuant to

28 U.S.C. § 1404(a), if the clause points to another federal forum. Id. at 579-80.

Here, the forum-selection clause points to either the United States District Court for the

Eastern District of Michigan (a federal forum), or the Oakland County, Michigan Circuit Court

(a state forum). Accordingly, the Court treats Synergy's motion as a motion to dismiss for *forum*

*non conveniens*, or, in the alternative, to transfer venue to the U.S. District Court for the Eastern

District of Michigan pursuant to 28 U.S.C. § 1404(a).[6]

Federal law governs the consideration of a forum-selection clause relative to a § 1404(a)

or a *forum non conveniens* analysis. See Stewart Org., Inc. v. Ricoh Corp., 487 U.S. 22, 31

---

[6] In Atlantic Marine, the Supreme Court declined to decide whether it is also permissible to enforce a forum-selection clause via a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6). 134 S.Ct. at 580. In 2014, however, the First Circuit held that "the use of Rule 12(b)(6) to evaluate forum selection clauses is still permissible in this Circuit," and also that the court would not decline to enforce a valid forum-selection clause "simply because a defendant brought a motion under 12(b)(6) as opposed to under § 1404 or *forum non conveniens*." Claudio-De Leon v. Sistema Universitario Ana G. Mendez, 775 F.3d 41, 46 n.3 (1st Cir. 2014). There is, though, an important procedural difference between a motion to dismiss under Rule 12(b)(6) and the approach outlined in Atlantic Marine. On a motion to dismiss pursuant to Rule 12(b)(6), the court must accept all well-pleaded facts as true, draw all reasonable inferences in favor of the plaintiff, and may not consider evidence outside the pleadings, with the exception of documents referenced in the complaint and central to plaintiff's claim and documents whose authenticity is not disputed. See id.; Rivera v. Centro Medico de Turabo, Inc., 575 F.3d 10, 15 (1st Cir. 2009). In contrast, the process described in Atlantic Marine places the burden on the party opposing transfer to establish that the forum-selection clause is unenforceable. See 134 S. Ct. at 581-82. Under this construct, the Court is not required to accept plaintiff's allegations as true. Further, the Court may receive evidence outside the pleadings, make credibility determinations, and issue findings of fact relevant to the enforceability of a forum-selection clause. Here, Synergy has not moved to dismiss pursuant to Fed. R. Civ. P. 12(b)(6). In addition, both parties have submitted evidence outside the pleadings, in the form of affidavits and supporting documentation. Accordingly, the Court declines to treat Synergy's motion as arising under Fed. R. Civ. P. 12(b)(6), and will instead apply the approach outlined in Atlantic Marine. See Kebb Mgmt., Inc. v. Home Depot U.S.A., Inc., 59 F. Supp. 3d 283, 287 (D. Mass. 2014).

(1988); <u>Caribbean Wholesales & Serv. Corp. v. U.S. JVC Corp.</u>, 24 F. App'x 16, 18 (2d Cir.

2001).[7] As the Court explained in <u>Atlantic Marine</u>,

> [i]n a typical case not involving a forum-selection clause, a district court considering a § 1404(a) motion (or a *forum non conveniens* motion) must evaluate both the convenience of the parties and various public-interest considerations. Ordinarily, the district court would weigh the relevant factors and decide whether, on balance, a transfer would serve "the convenience of the parties and witnesses" and otherwise promote "the interest of justice."

134 S. Ct. at 581 (quoting 28 U.S.C. § 1404(a)). "The calculus changes, however, when the

parties' contract contains a forum-selection clause." <u>Id.</u> "When the parties have agreed to a valid

forum-selection clause, a district court should ordinarily transfer the case to the forum specified

in that clause." <u>Id.</u> "Only under extraordinary circumstances unrelated to the convenience of the

parties should a § 1404(a) motion be denied." <u>Id.</u>

In <u>Atlantic Marine</u>, however, the Court assumed that the parties' forum-selection clause

was "contractually valid." <u>Id.</u> at 581 n.5. Here, in contrast, Kurra argues that the parties' Non-

Competition Agreement is not contractually valid and should be set aside because Synergy

coerced him into signing the Agreement under duress. This raises the question of whether the

*validity* of a forum-selection clause in a diversity case should be governed by state or federal

law. <u>Atlantic Marine</u> did not squarely address this question, and earlier case law is unsettled. <u>See</u>

<u>Stewart</u>, 487 U.S. at 39 (Scalia, J., dissenting) (insisting that "state law controls the question of

the validity of a forum-selection clause between the parties"); <u>Barnett v. DynCorp Int'l, L.L.C.</u>,

___ F.3d ___, 2016 WL 4010440, *3-*5 (5th Cir. 2016) (collecting cases); <u>see also</u> <u>Bright v.</u>

---

[7] In <u>Atlantic Marine</u>, the Supreme Court noted that § 1404(a) "is merely a codification of the doctrine of *forum non conveniens* for the subset of cases in which the transferee court is within the federal courts system," and that as a result, "courts should evaluate a forum-selection clause pointing to a nonfederal forum in the same way that they evaluate a forum-selection clause pointing to a federal forum." <u>Id.</u> at 580.

Zimmer Spine, Inc., 999 F. Supp. 2d 1251, 1253 (N.D. Ala. 2014) (observing that the Atlantic Marine Court's emphasis on a "valid" forum-selection clause "only renews this court's discomfort" with the Stewart decision).[8]

As a practical matter, however, the Court need not reach this question, because it cannot discern any material difference between state and federal law with respect to the enforceability of the parties' forum-selection clause.

Under federal law, as set forth in M/S Bremen v. Zapata Off-Shore Co., 407 U.S. 1 (1972), "forum selection clauses 'are prima facie valid and should be enforced unless enforcement is shown by the resisting party to be "unreasonable" under the circumstances.'" Rivera v. Centro Medico de Turabo, Inc., 575 F.3d 10, 18 (1st Cir. 2009) (quoting Bremen, 407 U.S. at 10).

> More specifically, a forum selection clause should be enforced unless the resisting party can show "that enforcement would be unreasonable and unjust, or that the clause was invalid for such reasons as fraud or overreaching…[or that] enforcement would contravene a strong public policy of the forum in which suit is brought, whether declared by statute or by judicial decision."

Id. (quoting Bremen, 407 U.S. at 15) (alteration and omission in original).

If, however, the validity issue is governed by state, rather than federal law, Massachusetts' choice-of-law rules[9] would compel the Court to apply Michigan law, as the parties' Non-Competition Agreement expressly provides that the Agreement "shall be construed in accordance with Michigan law," Guduguntla Decl., Ex. B. See Melia v. Zenhire, Inc., 462 Mass. 164, 168 (2012) (examining the validity of a forum-selection clause under New York law,

---

[8] See also Matthew J. Sorensen, Enforcement of Forum-Selection Clauses in Federal Court After Atlantic Marine, 82 Fordham L. Rev. 2521, 2546-47 (2014).

[9] When sitting in diversity, a federal court must apply the choice-of-law rules of the forum state. See Hartford Fire Ins. Co. v. CNA Ins. Co. (Europe), 633 F.3d 50, 54 n.7 (1st Cir. 2011).

where parties' contract stated that it was to be governed and construed according to the laws of New York); Hodas v. Morin, 442 Mass. 544, 549-50 (2004) ("As a rule, '[w]here the parties have expressed a specific intent as to the governing law, Massachusetts courts will uphold the parties' choice as long as the result is not contrary to public policy.'") (quoting Steranko v. Inforex, Inc., 5 Mass. App. Ct. 253, 260 (1977)) (alteration in original).[10]

Much like the strong federal policy favoring forum-selection clauses, "Michigan's public policy [also] favors the enforcement of contractual forum-selection clauses…." Turcheck v. Amerifund Fin., Inc., 272 Mich. App. 341, 345, 725 N.W.2d 684, 688 (Mich. Ct. App. 2006). In fact, Mich. Comp. Laws § 600.745(2) provides that:

> [i]f the parties agreed in writing that an action on a controversy may be brought in this state and the agreement provides the only basis for the exercise of jurisdiction, a court of this state shall entertain the action if all of the following occur:
>
> (a) The court has the power under the law of this state to entertain the action.
>
> (b) This state is a reasonably convenient place for the trial of the action.
>
> (c) The agreement as to the place of the action is not obtained by misrepresentation, duress, the abuse of economic power, or other unconscionable means.
>
> (d) The defendant is served with process as provided by court rules.

---

[10] Michigan law would likely apply even if the choice-of-law clause in the parties' Agreement were unenforceable. "In a contract case, Massachusetts applies a 'functional choice-of-law approach that responds to the interests of the parties, the States involved, and the interstate system as a whole.'" Adelson v. Hananel, 641 F. Supp. 2d 65, 81 (D. Mass. 2009) (quoting Bushkin Assocs., Inc. v. Raytheon Co., 393 Mass. 622, 631 (1985)). The functional approach, which is "guided by the Restatement (Second) of Conflict of Laws," dictates that in contract disputes, "the law chosen should be the law with the 'most significant relationship to the transaction and the parties.'" Id. (quoting Restatement (Second) of Conflict of Laws, § 188(1) (1971)). Here, the Non-Competition Agreement was executed in Michigan, and Synergy is a Michigan corporation with a principal place of business in Michigan. Further, at the time the contract was executed, Kurra had relocated to Michigan to begin employment with Synergy. Thus, the Court finds that Michigan law has the most significant relationship to the transaction.

Thus, Michigan courts "will enforce a forum-selection clause as written[,]" "unless one of the statutory exceptions applies." Id. at 348. In Turcheck, moreover, the Michigan Court of Appeals noted that "[a] party seeking to avoid a contractual forum-selection clause bears a heavy burden of showing that the clause should not be enforced." Id. Notably, the Court of Appeals cited the federal Bremen case to support this proposition, thus confirming that the federal and Michigan standards are compatible. Accord Cinetic Dyag Corp. v. Forte Automation Sys., Inc., No. 2:08-CV-11790, 2008 WL 4858005, at *9 (E.D. Mich. Nov. 6, 2008) (observing that "federal, Michigan, and Illinois law all favor the enforcement of forum-selection clauses and consider such clauses as presumptively valid").

The federal Bremen standard and Michigan law are also similar in that both allow for a contractual forum-selection clause to be invalidated on the grounds of duress or coercion. First, Mich. Comp. Laws § 600.745(2)(c) allows the court to decline to enforce a forum-selection clause that was agreed to under duress or as a result of the abuse of economic power, or other unconscionable means. Similarly, the Bremen standard also permits the court to set aside a forum-clause clause on the grounds of "overreaching," which refers to "one party's exploitation of its overwhelming bargaining power or influence over another party." Rivera, 575 F.3d at 21.

In sum, where there is no material difference between the federal Bremen standard and Michigan state law, it is unnecessary to decide this issue. See Rivera, 575 F.3d at 16; Lambert v. Kysar, 983 F.2d 1110, 1116 (1st Cir. 1993). "[I]n the absence of a conflict between state law and the federal common law standard set forth in The Bremen v. Zapata Off-Shore Co., 407 U.S. 1 (1972), the First Circuit has generally applied the Bremen standard." Carter's of New Bedford, Inc. v. Nike, Inc., No. 13-cv-11513, 2014 WL 1311750, at *2 (D. Mass. Mar. 31, 2014); see also Rivera, 575 F.3d at 16; Lambert, 983 F.2d at 1116 (declining to decide the "daunting question"

15

of whether forum-selection clauses are to be treated as substantive or procedural for <u>Erie</u> purposes, because the court found no material discrepancy between Washington state law and federal law); <u>Noel v. Walt Disney Parks & Resorts U.S., Inc.</u>, No. 10-40071, 2011 WL 1326667, at *5 (D. Mass. Mar. 31, 2011).

Thus, the Court proceeds as follows: first, it will determine whether Kurra has met his "heavy burden" of showing that the parties' contractual forum-selection clause is invalid on the grounds of duress or coercion, under the functionally similar legal standards established by federal and Michigan law. <u>See</u> <u>Bremen</u>, 407 U.S. at 19; <u>Turcheck</u>, 272 Mich. App. at 348. Assuming that the forum-selection clause is valid and enforceable, the Court will then proceed to evaluate Synergy's Motion to Dismiss or Transfer in accordance with <u>Atlantic Marine</u>.

### B. Analysis

#### i. The forum-selection clause is enforceable.

Kurra has not met his burden of proving that the forum-selection clause is unenforceable because he entered into the Non-Competition Agreement under duress.

In Opposition to Synergy's Motion to Dismiss or Transfer, Kurra filed an Affidavit [ECF No. 6-1] ("Kurra Aff.") asserting that in January 2014, while he was still residing in India, he entered into a "Contract of Service" with an Indian affiliate of Synergy (the "Service Contract"), in which he agreed to work for Synergy for eighteen months, and Synergy agreed to sponsor Kurra's application for an H1-B visa. Kurra Aff. ¶ 4. Kurra further states that on January 23, 2014, he also signed a Visa Application Agreement, in which he agreed to reimburse Synergy for certain expenses should he fail to begin his employment or leave the company after less than eighteen months. <u>Id.</u> ¶ 5. Kurra's Affidavit asserts that other than the Service Contract and the Visa Application Agreement, he "was not made aware of any contracts or agreements that [he]

16

was required to sign" while he was in India. Id. ¶ 6. He further claims that after he arrived in the United States, Synergy's HR manager told him "for the first time" that he needed to sign another agreement—*i.e.*, the Non-Competition Agreement, in order to be put on Synergy's payroll. Id. ¶ 10. Kurra asserts that he signed the Non-Competition Agreement because "I knew that, if Synergy terminated my employment, my visa would be invalid and I would have to return to India," and because "after more than a year of preparation . . . and significant out-of-pocket expense," he did not want to jeopardize his position at Synergy. Id. ¶ 11.

In response to Kurra's Affidavit, Synergy submitted a Supplemental Declaration from its president, Sridhar Guduguntla [ECF No. 13-1], in which Guduguntla challenges Kurra's purported lack of awareness about the Non-Competition Agreement until after his arrival in the United States. In support, Guduguntla presents another copy of the Non-Competition Agreement, which appears to have been signed and initialed by Kurra on January 23, 2014, more than one year prior to his arrival in the United States. [ECF No. 13-1].[11] At that time, Kurra was only beginning to negotiate his employment with Synergy and still resided in India.

Notably, Kurra has not responded to Guduguntla's Supplemental Declaration. He has not contested the authenticity of the January 23, 2014 Non-Competition Agreement, nor has he disputed the fact that this document appears to bear his initials and signature, along with a date of January 23, 2014. Thus, the Court credits Guduguntla's Supplemental Declaration, and finds that Kurra in fact became aware of and agreed to the terms of the Non-Competition Agreement by January 23, 2014. To the extent that Kurra's Affidavit contains statements to the contrary, the

---

[11] Guduguntla represents that he is familiar with Synergy's books and records, and that the Non-Competition Agreement attached to his Declaration is a true and accurate copy of the Agreement signed by Kurra on January 23, 2014. Supp. Guduguntla Decl. ¶¶ 2-4.

Court finds that these assertions are not credible in light of the documentary evidence submitted by Synergy, which Kurra has not disputed or rebutted.

Therefore, Kurra's argument that he entered into the Non-Competition Agreement under duress is not factually supported. Rather, the evidence indicates that Kurra was aware of and agreed to the Agreement, including its forum-selection clause, before he left India, and before Synergy obtained the "overwhelming bargaining power" that could have potentially given rise to a duress argument. Rivera, 575 F.3d at 21; see also Hungerman v. McCord Gasket Corp., 189 Mich. App. 675, 677, 473 N.W.2d 720, 721 (1991) ("In order to void a contract on the basis of economic duress, the wrongful act or threat must deprive the victim of his unfettered will."). As a result, Kurra has not met his burden of proving that the Non-Competition Agreement's forum-selection clause should be set aside on the grounds of duress or coercion, and the "presumption of enforceability" remains in force. Rivera, 575 F.3d at 18.

### ii. Synergy's motion to transfer is allowed.

"When the parties have agreed to a valid forum-selection clause, a district court should ordinarily transfer the case to the forum specified in that clause," and "[o]nly under extraordinary circumstances unrelated to the convenience of the parties should a § 1404(a) motion be denied." Atlantic Marine, 134 S. Ct. at 581. The Court finds that no such circumstances are present in this case. As the Court held in Atlantic Marine, the plaintiff's choice of forum (here, Massachusetts) "merits no weight" when there is a valid forum-selection clause in play. Id. Further, the Court cannot consider Kurra's private interests in having this dispute litigated in Massachusetts, because "[w]hen parties agree to a forum-selection clause, they waive the right to challenge the preselected forum as inconvenient or less convenient for themselves or their witnesses, or for their pursuit of the litigation." Id. at 582. Finally, the Court finds that enforcing the forum-

selection clause would not be contrary to any relevant public policy. As previously discussed, both federal and Michigan state law favor the enforcement of forum-selection clauses.

Although Synergy appears to favor dismissal of this action as the appropriate remedy, the Court will instead grant Synergy's alternative motion for transfer pursuant to 28 U.S.C. § 1404(a). Where the parties' forum-selection clause permits the dispute to be heard in a federal forum, it is typically more efficient to transfer the action, as this approach conserves the courts' and the parties' resources. See Salovaara v. Jackson Nat. Life Ins. Co., 246 F.3d 289, 299 (3d Cir. 2001); Kahn v. Am. Heritage Life Ins. Co., No. 06-01832, 2006 WL 1879192, at *7 (E.D. Pa. June 29, 2006).

## IV.      CONCLUSION

For the foregoing reasons, the Court finds that it has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332, and that it is in the interest of justice to transfer this action to the U.S. District Court for the Eastern District of Michigan, Southern Division, which is a forum to which all parties have consented. See 28 U.S.C. § 1404(a); Atlantic Marine, 134 S. Ct. at 581.

Therefore, Plaintiff's Motion to Remand [ECF No. 8] is DENIED, and Defendant's Motion to Dismiss is DENIED, but its alternative Motion to Transfer is ALLOWED, and pursuant to 28 U.S.C. § 1404(a), the Court hereby ORDERS that this action be transferred to the United States District Court for the Eastern District of Michigan, Southern Division.

**SO ORDERED.**

Dated: September 19, 2016

/s/ Allison D. Burroughs
ALLISON D. BURROUGHS
U.S. DISTRICT JUDGE
